# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

UNITED STATES ex rel

STEPHANIE SCHWEIZER
6346 Desco Drive
Dallas, TX 75225

BRINGING THIS ACTION ON
BEHALF OF THE UNITED STATES
OF AMERICA
c/o Kenneth Magidson
United States Attorney
U.S. Attorney's Office
Southern District of Texas
1000 Louisiana, Ste. 2300
Houston, TX 77002

- and -

c/o Loretta E. Lynch
Attorney General of the United States
Department of Justice
950 Pennsylvania Avenue, NW
Room 2242
Washington, D.C. 20530

Plaintiffs,

v.

CANON INC.
1 Canon Place
Lake Success, NY 11042

Serve:

and

))))))))))))))))))))))))

Civil Action No.:

COMPLAINT FOR
VIOLATIONS OF
FEDERAL FALSE
CLAIMS ACT

JURY TRIAL DEMAND

FILED UNDER SEAL

CANON BUSINESS SOLUTIONS INC.)
1 Canon Place
Lake Success, NY 11042

Serve:

Defendants.

## QUI TAM COMPLAINT

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from the false claims presented, and or caused to be presented, by Canon Inc., in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq., as amended.

2. The False Claims At, (hereinafter the Act) was originally enacted in 1863 during the Civil War, and was substantially amended by the False Claims Amendments Act of 1986 and signed into law on October 17, 1986.  Congress enacted these amendments to enhance the Government's ability to recover losses sustained as a result of fraud against the United States and to provide a private cause of action for the protection of employees who act in furtherance of the purposes of the Act.  Congress acted after finding that fraud in federal programs and procurement is pervasive and that the False Claims Act, which Congress characterized as the primary tool for combating fraud in government contracting, was in need of modernization.

3. The Act provides that any person or entity who knowingly submits a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government, including attorneys' fees. The Act allows any person having information regarding a false or fraudulent claim against the

2

Government to bring a private cause of action for himself and on behalf of the Government and to share in any recovery. The complaint is to be filed under seal for 60 days (without service on the Defendant during such 60-day period) to enable the Government (a) to conduct its own investigation without the Defendant's knowledge and (b) to determine whether to join the action.

4. Based on these provisions, Plaintiff/Relator seeks to recover damages and civil penalties arising from Defendants' continued presentation of false claims to the United States Government in connection with General Services Administration Contracts Nos GS-25F-0060M; GS-35F-5275H, and other contracts with the United States Government to provide printers, copiers, and related services.

## PARTIES

5. Plaintiff/Relator, Stephanie Schweizer is a resident of Dallas, Texas and had worked for Océ North America Inc. ("Océ") from December 2004 to December 2005. During her tenure, her job was to serve as a "General Services Administration contracts manager" in Arlington, Virginia. The position required Schweizer to monitor Océ's compliance with the General Services Administration contracts, also known as GSA contracts. Her other day-to-day responsibilities included updating product listings, negotiating modifications with the General Services Administration's contracting officer, and answering questions from Océ sales personnel. Additionally, the position required Ms. Schweizer to serve as the primary negotiator for Océ with the Government, investigate the merger of Imagistic to Océ North America, to review their GSA contract since its inception, to prepare for the 10 year renewal of their GSA Contract, to oversee the audit of Océ North America, to receive commercial pricing and provide federal pricing to Océ's GSA Contracting Officer for approval and to request pricing exceptions for the entire sales force to the Government, as well as to assure the compliance of Océ's Federal Contracts within the company.

3

6. In 2012, Océ was purchased by Canon Inc. ("Canon") Prior to the purchase, Ms. Schwizer position allowed her to be aware and privy to the General Services Administration ("GSA") contracts that were in place in regards to the types of copiers that were being purchased, as well as the services that were being provided by Océ. The GSA schedules govern all other Federal and Commercial contracts and it is one of the most prestigious contracts a corporation can have. Because of this prestige, it comes with responsibility and very serious consequences if violated. The contracting officer for the government and the contract negotiator of the company are the only persons authorized to negotiate with the government on behalf of a corporation. If there is any wrong doing, the responsible parties can go to jail for not only knowingly committing fraud, but also unknowingly. The GSA contracts are negotiated for five year terms, with renewals every five years. The contracts required Océ to provide government customers with the same discount offered to certain private sector purchasers.

7. In 2006, Ms. Schwizer noticed that the current GSA contract had irregularities, specifically, the United Stated Government was overpaying for copiers and services. This is a violation as the United States government was required to get the discounted price for products purchased through the GSA system. In 2006, Ms. Schwizer began representing the United States of America against Océ North America. The U.S. Government reached a settlement in 2009 without Ms. Schwizer's consent. Ms. Schwizer objected and won on appeal on all three counts from the U.S. Appeals Court in the District of Columbia. In 2012 Ms. Schwizer agreed to settle with Canon and dropped the case on the eve of trial and the docket list reflects the parties reached a settlement, however, as of the date of this filing, Canon has never settled with Ms. Schwizer.

8. While the GSA contracts in question have been tried in court and the parties reached a settlement as to the improprieties, the issue at hand is the fact that Océ, now

Canon, has never done anything to rectify the problem. All contracts continue as before and were not changed or modified to correct for the over-charging to the United States by Océ, now Canon.

9. Canon Business Solutions Inc. is a wholly owned subsidiary of Canon Inc., and has been violating the False Claims Act by selling printing products to the United States Government that were manufactured in non-designated countries and by failing to offer products to the United States at the reduced rates that it sells the same products to non-government customers. Since this is a continuation of a contract from 2001, it is important to show the chain of ownership. Océ merged with Imagistics. Canon Inc. acquired Océ. The GSA contract in question is still in use from 2001 and was novated to Canon Inc. when Canon made the acquisition of Océ.

10. Ms. Schweizer demonstrates that through 2015 the pricing and trade fraud has progressively worsened. In 2007, Canon paid a $300 million fine and had to walk away from their GSA contract. Later Canon paid $150 million to get back on this GSA Contract and began placing their products on the above mentioned contract and agreed with the government to stop violating the false claims act. However, to date there are current commercial contracts that receive up to a 60% difference than what the Government receives and sometimes 80% when trade-ins are added to the pricing.

## JURISDICTION

This action arises under 31 U.S.C. § 3729 related to false or fraudulent claims made against the United States Government. Pursuant to 31 USC § 3730, a private person may bring a civil action for a violation of § 3729 for the person and for the United States Government. This Court possesses subject matter jurisdiction to entertain this action under 28 U.S.C. §§ 1331 and 1345. The Court may exercise personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732

(a) because the defendants reside or transact business in this district.

5

# VENUE

Venue is proper in this district under 31 U.S.C. § 3732 and 28 U.S.C. § 1391 (b) and (c) because at least one of the defendants resides or transacts business in this district, and because the claim arose there.

## BACKGROUND

11. Relator brings this action for violations of 31 U.S.C. §§3729 et seq. on behalf of herself and the United States Government pursuant to 31 U.S.C. §3730(b)(1). Relator has knowledge of the false statements and/or claims presented by the Defendant to the Federal Government as alleged herein.

12. All of the products sold or leased to the United States Government by Canon Inc. were manufactured by Canon Inc., or by its predecessor Océ, N.V. of Venlo, the Netherlands; Océ, N.V., which manufactures printers and document management systems.

13. In December, 2004, Ms. Schweizer was hired by Océ North America, in Arlington, VA as the Manager - GSA/Federal Contracts.

14. Serving in this capacity, Ms. Schweizer became familiar with the several GSA contracts under which Océ, now Canon, was selling printers, copiers and related services to the United States Government.

15. Océ obtained Contract GS-25F-0060M/ GSA Contract Schedule 36 for the period October 1, 2001 through September 30, 2006 (with three 5-year options which have been renewed and are still in effect). At the time, Océ offered 751 products for sale or lease under this contract, and which is still on-going.  Océ also was awarded Contract No. GS-35F-5275H.

16. When Canon purchased Océ in 2012, it was done to capture market share and to garner access to the General Services Administration ("GSA") contracts.  This is evidenced by the GSA contracts being novated to Canon by Océ when Océ was purchased.  This is not unusual in mergers.  However, no modifications were

made to the GSA contracts from their original filing under Océ.

17. Exhibit A-1 and A-2 state on page one that the GSA contract has been novated to Canon by Océ. Because the contracts were novated, Canon was able to gain access to the United States Government contracts without having to go through any new negotiations. Canon acquired the GSA contracts that were already in existence, which had been in violation of the Fair Trade Act, and which continues to cause the United States Government to pay a premium for copiers, as compared to other companies.

18. Exhibit B shows that companies are paying less for copiers outlined in GSA contract GS-00F-0002V. Evidence shows that the price that the government pays is actually higher than those of some normal businesses. While Exhibit B is just one instance, it clearly shows that Canon is in violation of the Fair Trade Act.

19. Canon has not changed the pricing on the GSA contracts. Because they have not changed the pricing, and because they have never paid a fine, Canon has continued with the fraud that was prevalent when Océ negotiated the contracts, thus fulfilling the knowingly factor of the code. Canon is required through the Price Reduction Clause, the Basis of Award and all laws surrounding government contracting to give the government the best price.

20. **The Price Reduction Clause**

The Price Reduction Clause ("PRC") deals with price reductions or discount changes during the life of the schedule contract, and maintains the link between commercial and GSA pricing. The PRC maintains the link between GSA and commercial pricing. For example, if the GSA negotiates 10% off the list price of a given product, the PRC should state that the GSA will maintain 10% off the commercial price list (or 10% better pricing than a national account customer, depending on the terms of agreement). Any change in a schedule customer's BOA customer pricing or discount arrangement can "disturb" the pricing relationship and trigger a price reduction.

7

These disturbances can include: Revising the commercial catalog or price list giving the BOA customer or category of customers a more favorable discount than what was given to the government, or granting a special discount to a BOA customer if the commercial price for the BOA customers drops below the PRC floor. The GSA's price also drops proportionately and retroactively. Failure to comply with the requirements of the PRC can expose the company to strong penalties, including a breach of contract claim, termination of the schedule contract or a False Claims Act claim, with treble damages.

21. Supporting this, Clause 52.225-5, Trade Agreements, applies to these contracts. This clause states in pertinent part:

"The Contracting Officer has determined that the Trade Agreements Act and FTA's apply to this acquisition. Unless otherwise specified, these trade agreements apply to all items in the Schedule. <u>The Contractor shall deliver under this contract only US-made, designated country, Caribbean Basin Country, or FTA country end products except to the extent that in its offer, it specified delivery of other end products in the provision entitled "Trade Agreements Certificate."</u>"

22. The above stipulates that copiers that are being sold through the GSA contracts must be manufactured in US Trade Agreement compliant countries. While Canon does supply some components that are being manufactured in compliant countries, other products are not and this is where there is concern.

23. Canon is located in a designated country, Japan, and it has manufacturing facilities in countries that are both compliant as well as non-compliant. If the products and components that it is selling or leasing to the United States were being manufactured in Japan or in another US designated country, then Canon would be in compliance with the Trade Agreement Clause.

24. When Canon purchased Océ, Océ had specifically represented to the United States

8

Government that the products and components that it manufactured came from Netherlands. Since the GSA contract was novated, Canon had to abide by the same rules and have its products manufactured in countries that are compliant with the Federal Trade law. But this did not occur. The products sold by Océ, now Canon, to the United States Government are either comprised completely of components made in non-designated countries and later assembled in a designated country or, they were completely manufactured and assembled in non-designated countries.

25. At the time of Ms. Schweizer's employment, she had conversations with several Océ employees who confirmed that Océ products were almost completely manufactured in China or Malaysia, neither of which are designated countries.  When Canon purchased Océ, the production of the products either continued in the Océ facilities in China and Malaysia, or where moved to the manufacturing facilities that Canon already owned in China.

26. Canon owns, operates, and produces products and equipment at its manufacturers in China.   These products are sold to the US Government through the GSA contracts. Canon's website,

http://www.canon-asia.com/personal/web/company/about (also shown as Exhibit C), outlines the different manufacturing locations that occur in China and what items are manufactured/produced there.   The website shows that there are seven Canon affiliated companies that produce products throughout China and of those seven, three produce products that are related to copiers. By manufacturing products in China, Canon can capture economic benefits by using lower labor costs, which translates to bottom line profitability.

27. Additionally, certain mechanisms in the copiers are made with the ability to track and keep record of the copies that are done on that machine.  This tracking is usually visible to the manufacturer.   Canon, being a Japanese company, requires that any Canon equipment that is used in Japan be made in Japan and its equipment

9

be modeled only for use in Japan. However, a number of U.S. products are manufactured in China violating TAA, with some of these components containing chips in every memory board. This is supported with the fact that some of Canon's manufacturing facilities are located in China, as referenced above.

28. It should be noted that it is imperative for the Government to understand that there is a difference between what constitutes a product and what constitutes a piece of equipment. Previously, the Government asserts that Canon only sells about six products to the U.S. Government. This is inaccurate and fails to see the magnitude of the alleged violations in this complaint. In actuality, Canon sells over 700 products, which were from Océ, and over 300 products from what was once Imagistics. Once piece of equipment is comprised of over 30 products. Thus, if one copier from the Department of Justice or from another government entity was taken apart, it would be seen that the more than 30 components, which are products, are made in China. Multiply the number of copiers that are sold through the GSA contracts by the 30 products that make up the components, and the number grows significantly.

29. Copiers that are purchased through GSA contracts are used by numerous government agencies. This is a potential security breach for the United States as this information, which should not leave the agency, has the potential to be viewable outside that organization. Recently, there have been a rash of hackings and attacks on United States companies, and it has been shown that some of the culprits are coming from China. The potential security breach should warrant the Government to have Canon desist in its current capacity.

30. Océ never amended the GSA contracts regarding the previous issues that had been identified by Ms. Schweizer, and thus making the GSA contracts in violation of the Federal Trade Act. Canon acquired Océ and the GSA contract was novated with no changes, thus Canon knowingly stepped into the shoes of Océ and continued with

10

the violations against the US Government Trade Agreement Act.

31. Canon is intentionally and knowingly selling non-compliant products to the United States Government in violation of the Trade Agreement Act.

32. The previous GSA contracts that had been novated to Canon also contained provisions that required Océ, now Canon, to give the United States Government the lowest and best price.

33. Supporting this, Clause 552.238-75 respecting Price Reductions states: Contractors were required to report any price reduction to the government and offer the same reduction to the government.

34. In addition, 552.238-75 states in pertinent part Before award of a contract, the Contracting Officer and the Offeror will agree upon (1) the customer (or category of customers) which will be the basis of award, and (2) the Government's price or discount relationship to the identified customer (or category of customers) which disturbs this relationship shall constitute a reduction.

35. It further states: During the contract period, the Contractor shall report to the Contracting Officer all price reductions to the customer (or category of customers) that was the basis of award.   The Contractor's report shall include an explanation of the conditions under which the reductions were made.

36. If the Contractor gives a non-government customer a more favorable price during the course of the contract, the Government is entitled to receive a better deal. A price reduction shall apply to purchases under this contract if, after the date negotiations conclude, the Contractor: (i)   Revises the commercial catalog, pricelist, schedule or other document upon which contract award was predicated to reduce prices; (ii) Grants more favorable discounts or terms and conditions than those contained in the commercial catalog, pricelist, schedule or other documents upon which contract award was predicated; or (iii) Grants special discounts to   the customer (or category of customers) that formed the basis of award, and the change disturbs the

11

37. When a price reduction as defined above occurs then, <u>"The Contractor shall offer the price reduction to the Government with the same effective date, and for the same time period, as extended to the commercial customer (or category of customers)."</u>

38. Previously, Océ, now Canon, was routinely giving non-government customers substantially better prices for the same products and creating false documents in an attempt to hide this in the event of a government audit in violation of the above contractual provisions. Canon has continued this behavior as non-government customers are receiving lower pricing for the same products that the US Government is purchasing through the GSA contracts.  As stated above, Exhibit B shows an example of a company receiving lower pricing than what is stated on the current GSA contract.  The copier is the same type offered to the US Government, but the pricing is lower than what the US Government pays.  While it can be argued that this is just one instance of a price disparity, it is still a violation of Fair Trade Act and further investigation would support additional violations by Canon.

39. Additionally, the price shown is without any trade in discount.  This means that a trade in would actually cause their net price to be even lower that what is offered to the US Government through the GSA contract.

40. Canon knowingly and intentionally violated its obligation under the contract to give the Government the best value by amending the GSA price whenever it gave a category of customers a better price on a similar item.  Canon upon information and belief, never notified the Government that it was giving non-government customers favorable pricing.

## COUNT I

(*False Claims Act 31 U.S.C. §3729(a)(1) and (a)(2)*)

41. Relator re-alleges and incorporates by reference the allegations made in paragraphs

1 through 40 of this Complaint.

42. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§3729-32.

43. By virtue of the acts described above, the Defendants Canon Business Solutions Inc., and Canon Inc. knowingly submitted, caused to be submitted and continue to submit and to cause to be submitted false or fraudulent claims for payment and reimbursement by the United States Government for products that were manufactured in non-designated countries in violation of the Trade Agreement Act and the terms and conditions of the GSA contract and their express certification.

44. By virtue of the acts described above, the Defendants Canon Business Solutions Inc., and Canon Inc. knowingly submitted, caused to be submitted and continue to submit and to cause to be submitted false or fraudulent claims for payment and reimbursement by the United States Government for products when Defendants knowingly and intentionally did not offer the United States Government the best value or price, because Canon knowingly sold the same products to non-government customers under far favorable terms.

45. By virtue of the acts described above, the Defendants knowingly made, used or caused to be made or used, and continue to make or use or cause to be made or used, false statements to obtain Federal Government payment for false or fraudulent claims.

46. The United States Government has been severely damaged by the Defendants' violations as alleged above. The United States Government has been severely damaged because the Defendants' have knowingly sold products to the United States Government from non-compliant countries. The United States Government has been severely damaged as the result of Defendants' failure to adhere to the price reduction clauses in the applicable GSA contracts.  The United States Government has been severely damaged by the Defendant's violations of the False Claims Act.

13

47. As set forth in the preceding paragraphs, Defendant violated 31 U.S.C. §3729 and has thereby damaged and continues to damage the United States Government by its actions in an amount to be determined at trial.

## COUNT II
*(False Claims Act, 31 U.S.C. §3729 (a)(3))*

48. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 40 of this Complaint.

49. This is a claim for treble damages and for forfeitures under the False Claims Act, 31 U.S.C. §§3729-32.

50. By virtue of the acts described above, the Defendants defrauded the United States by failing to adhere to the applicable GSA Contracts price reduction clauses and receiving inflated payment for goods. By virtue of the acts described above, the Defendants defrauded the United States by failing to adhere to the applicable GSA Contracts and the Trade Agreement Act.

51. The United States, unaware of the falsity of the records, statements, omissions and/or claims made by Defendants, and in reliance on the accuracy thereof, paid for aforementioned false claims.

52. By reason of these actions and payments, the United States Government has been damaged and continues to be damaged in substantial amounts.  The exact amounts of the damage are to be determined at trial.

## PRAYER

WHEREFORE, Relator prays for judgment against Defendants as follows:

1. That Defendants cease and desist from violating the Trade Agreement Act and the price reduction provisions of the applicable GSA Contracts;

14

2. That Defendants cease and desist from violating 31 U.S.C. §3729 et seq;

3. That this Court enter judgment against the Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. §3729 et seq;

4. That Relator be awarded the maximum amount allowed pursuant to §3730(d) of the False Claims Act;

5. That Relator be awarded all costs and expenses of this action, including attorneys' fees;

6. That Relator recovers such other relief as the Court deems just and proper.

Respectfully submitted,

Ross B. Reifel Attorney At Law
Ross B. Reifel
Texas Bar No. 24088286
2800 Post Oak Blvd., Suite 4100
Houston, Texas 77056
(832) 390-2224
**Counsel for Relator**

Relator hereby demands trial by jury.

Ross B. Reifel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Complaint was mailed, postage prepaid, this _5TH_ day of January, 2016, to:

Kenneth Magidson
United States Attorney
U.S. Attorney's Office
Southern District of Texas
1000 Louisiana, Ste. 2300
Houston, TX 77002

Loretta E. Lynch
Attorney General of the United States
Department of Justice
950 Pennsylvania Avenue, NW
Room 2242
Washington, D.C. 20530

Ross B. Reifel